Cite as 2020 Ark. 349

# SUPREME COURT OF ARKANSAS
No. CV-19-700

|  |  |
|---|---|
| | **Opinion Delivered:** October 29, 2020 |
| AMERICAN HONDA MOTOR CO., INC. | |
| APPELLANT | |
| V. | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-18-2810] |
| LARRY WALTHER, DIRECTOR, ARKANSAS DEPARTMENT OF FINANCE AND ADMINISTRATION | HONORABLE CHRISTOPHER CHARLES PIAZZA, JUDGE |
| APPELLEE | AFFIRMED. |

**KAREN R. BAKER, Associate Justice**

Appellant American Honda Motor Co., Inc. ("American Honda"), appeals the Pulaski County Circuit Court's order denying American Honda's motion for summary judgment and granting summary judgment in favor of appellee Larry Walther, Director, Arkansas Department of Finance and Administration ("DFA"). This case stems from American Honda's appeal under the Arkansas Tax Procedure Act, Arkansas Code Annotated sections 26-18-101 et seq., challenging DFA's denial of American Honda's request for a corporate tax refund. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(a)(8) (appeal required by law to be heard by this court) and Arkansas Code Annotated section 26–18–406(c)(2) (Supp. 2019). We affirm.

*Facts & Procedural History*

The material facts are not in dispute. American Honda is headquartered in Torrance, California, and is the principal United States subsidiary of Honda Motor Company, Ltd., a Japanese automobile manufacturer. American Honda serves as the exclusive United States distributor of Honda products. American Honda distributes a fleet of vehicles designed to conserve natural resources and reduce pollution. The United States Government regulates automobile and light truck manufacturers in order to conserve natural resources and reduce pollution. The Environmental Protection Agency ("EPA") and the National Highway Traffic Safety Administration ("NHTSA") developed a National Program (the "Program") to reduce greenhouse gas ("GHG") emissions and improve fuel economy. Under the Program, vehicle manufacturers that sell fleets that are more fuel efficient than applicable NHTSA corporate average fuel economy ("CAFE") standards receive credits ("CAFE credits"). Additionally, manufacturers that sell fleets that are less polluting than applicable EPA GHG standards receive credits ("GHG credits"). Manufacturers may sell their excess CAFE and GHG credits for profit to other manufacturers that fall short of the Program standards. American Honda consistently receives CAFE and GHG credits (collectively referred to as "environmental credits") as a result of its distribution of a fleet of fuel efficient, low-carbon vehicles. Since 2011, American Honda's Office of Environment and Energy Strategy has managed the sales of its excess environmental credits to other vehicle manufacturers. During the 2015 tax period, the refund-claim year at issue in the present case, American Honda received $269,897,235 from the sale of six environmental credits to five different vehicle

manufacturers. American Honda also sold environmental credits during the tax years before and after the 2015 tax period. During the 2013 tax period, American Honda made one environmental-credit sale for proceeds of $2,898,000; during the 2014 tax period, American Honda made seven environmental-credit sales for proceeds of $35,765,203; and during the 2016 tax period, American Honda made five environmental-credit sales for $187,454,792.

The proceeds generated from six environmental-credit sales during the 2015 tax period amounted to 86 percent of American Honda's federal taxable income for the 2015 tax period. On its 2015 corporate tax return, American Honda reported the environmental-credit sales as nonbusiness income not allocable to Arkansas. Additionally, American Honda reported an overpayment of taxes and requested that the overpayment be carried over to be applied to its tax liability for the next tax year. DFA reclassified the proceeds from the environmental-credit sales as apportionable business income. This resulted in a net tax liability increase of $32,479. DFA treated this adjustment as a refund-claim denial rather than a proposed assessment and issued a notice of claim denial on July 14, 2016. American Honda filed a timely administrative protest of DFA's notice of claim denial. On June 14, 2017, an administrative hearing on American Honda's protest was held.

On August 7, 2017, an administrative decision was entered upholding the decision to reclassify the environmental-credit sales as business income. American Honda disagreed with DFA's administrative decision and on August 28 requested that the director revise the decision of the hearing officer. In an October 26, 2017 letter, DFA Deputy Director and

Commissioner of Revenue Walter Anger denied American Honda's request to revise the administrative decision.

On May 4, 2018, American Honda filed an action for judicial relief challenging DFA's decision in the Pulaski County Circuit Court. The parties filed cross-motions for summary judgment. Following a hearing on the parties' cross-motions for summary judgment, the circuit court granted DFA's motion for summary judgment on June 10, 2019. American Honda timely appeals and asserts that the circuit court erred by (1) wrongly deferring to DFA on statutory interpretation; (2) failing to strictly construe the taxing statute at issue in limitation of the tax; and (3) concluding that American Honda's sale of environmental credits resulted in business income.

I. *Deference to DFA*[1]

For its first point on appeal, American Honda argues that the circuit court erroneously deferred to DFA's statutory interpretation, giving it "great deference" based on pre-2009 case law, despite a statutory prohibition change to the standard for judicial review in a Tax Procedure Act case. In its initial brief, DFA argued that the 2009 amendments to the Tax Procedure Act did not abrogate the court's long-standing doctrine that a statutory interpretation by the agency responsible for its execution is highly persuasive and should not be reversed unless it is clearly wrong.

---

[1] This court granted the motions of the Arkansas State Chamber of Commerce and the New Civil Liberties Alliance for permission to file amicus curiae briefs in support of the appellant.

However, less than one month after American Honda filed its reply brief, this court handed down its decision in *Myers v. Yamato Kogyo Co., Ltd.*, 2020 Ark. 135, 597 S.W.3d 613. In *Myers*, we acknowledged confusion in prior cases regarding the standard of review for agency interpretations of statutes and clarified the level of deference due: agency interpretations of statutes will be reviewed de novo. We further explained:

> After all, it is the province and duty of this Court to determine what a statute means. In considering the meaning and effect of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. An unambiguous statute will be interpreted based solely on the clear meaning of the text. But where ambiguity exists, the agency's interpretation will be one of our many tools used to provide guidance.

*Id.* at 5–6, 597 S.W.3d at 617 (internal citations omitted).

Subsequently, the parties filed supplemental briefs addressing *Myers* and its effect on the present case. American Honda argues that while *Myers* dealt with interpretation of workers' compensation law, the decision clarified as a general matter that Arkansas courts should not defer to agency interpretations of statutes. DFA counters that by clarifying that "clearly wrong" was not the appropriate standard, *Myers* rendered American Honda's deference argument moot. In response, American Honda argues that because *Myers* was not decided in the context of the Arkansas Tax Procedure Act, it would be helpful to clarify its application here. We agree and take this opportunity to clarify that judicial review of DFA's interpretation of the Tax Procedure Act is de novo. *See* Ark. Code Ann. § 26-18-406(c)(1) (Supp. 2019) (A suit to contest a final assessment or determination of the secretary under this section shall be tried de novo in the circuit court.). Further, subdivision (c)(3) provides

5

that a presumption of correctness or weight of authority shall not attach to a final assessment or determination of the secretary in a trial de novo or an appeal under this section. Ark. Code Ann. § 26-18-406(c)(3).

## II. *Definition of Business Income*

Having established that we review DFA's statutory interpretation of the Tax Procedure Act de novo, we now turn to American Honda's second argument on appeal. American Honda argues that the misplaced deference afforded to DFA by the circuit court led to the adoption of DFA's broad definition of business income. American Honda argues that the circuit court failed to properly construe the definition of business income strictly against taxation as required by Arkansas Code Annotated section 26-18-313(a) (Supp. 2019). This section provides that "[w]hen the state seeks to impose a tax under the terms of a state tax law, then the statute imposing the tax shall be strictly construed in limitation of the imposition of tax." Ark. Code Ann. § 26-18-313(a).

DFA responds that American Honda misapprehends the burden of proof under the Tax Procedure Act. DFA contends that because American Honda is claiming a tax exemption for nonbusiness income, we apply the standard set forth in Arkansas Code Annotated section 26-18-313(b) (Supp. 2019)—"When a taxpayer claims to be entitled to a tax exemption, deduction, or credit under the terms of a state tax law, then the statute providing the tax exemption, deduction, or credit shall be strictly construed in limitation of the exemption, deduction, or credit."

Accordingly, we must interpret the term "business income," which is contained in the Uniform Division of Income for Tax Purposes Act ("UDITPA") codified at Arkansas Code Annotated §§ 26–51–701 through -723. This Act governs the manner in which Arkansas may impose income and franchise taxes on the earnings of multistate and multinational corporations doing business in the state. *Pledger v. Getty Oil Expl. Co.*, 309 Ark. 257, 831 S.W.2d 121 (1992). The UDITPA is designed to fairly apportion among the states in which a corporation does business the fair amount of regular business income earned by the corporation's activities in each state. *Id.* While the term "business income" is contained in the UDITPA, we note that it is in the definitions section of this Act. Ark. Code Ann. § 26-51-701(a) (Repl. 2012). Thus, despite the parties' arguments to the contrary, we are not tasked with interpreting "the statute imposing the tax" as contemplated by section 26-18-313(a), nor are we interpreting "the statute providing the tax exemption, deduction, or credit" as contemplated by section 26-18-313(b). Therefore, we decline the parties' invitation to strictly construe the definition of "business income" in limitation of the imposition of a tax, exemption or deduction. Instead, we apply the plain language of the definition of "business income" as set forth in Arkansas Code Annotated section 26–51–701(a):

> [I]ncome arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations.

"Nonbusiness income" is defined in Arkansas Code Annotated section 26–51–701(e) as "all income other than business income." The focus of the statute defining "business income" is

7

the nature of the taxpayer's business. *Getty Oil*, 309 Ark. at 262, 831 S.W.2d at 124. Under the statute, business income arises from either of two sources: (1) transactions and activity in the regular course of the taxpayer's business, referred to as the transactional test, or (2) income from the acquisition, management, and disposition of property that constitutes integral parts of the taxpayer's regular business, referred to as the functional test. *Id.* at 262, 831 S.W.2d at 124–25 (citing McGowan and Murray, *The Business v. Nonbusiness Income Controversy: Recent Developments*, 8 Journal of State Taxation 303, 303–304 (1989)).

In *Getty Oil*, we held that the interest accrued on a promissory note issued to the corporate taxpayer by its parent company was nonbusiness income and therefore not subject to taxation. We explained that under the transactional test, the transfer of the note to the corporate taxpayer was an extraordinary and nonrecurring event. We further explained that this was not a transaction in the regular course of the taxpayer's business; the taxpayer gave no consideration for the multimillion-dollar intercompany note; and the parent corporation simply used the subsidiary taxpayer to hold the note. This was the only promissory note that the taxpayer was shown to have held and it was not shown to have accrued any other interest. Therefore, we held that this unique, non-recurring event was not a transaction that occurred in the regular course of the taxpayer's business.

We noted that under the functional test, the taxpayer was not in the business of acquiring, managing, or disposing of this type of property. We explained that the parent company transferred the intercompany note to a subsidiary corporate entity, the taxpayer, for bookkeeping purposes, and no consideration was given for the note. We considered the

8

taxpayer a mere "passive holder of a note that was generated as a result of an intercompany transaction to which it was not a party." *Getty Oil*, 309 Ark. at 263, 831 S.W.2d at 125. Thus, we held that the acquisition, management, and disposition of the promissory note was not an integral part of the taxpayer's regular business.

American Honda asserts that instead of identifying transactions in the regular course of its business of distributing Honda vehicles and other Honda-branded products, the circuit court transformed an observation of facts weighing against business-income classification in *Getty Oil* into a "unique, nonrecurring event" test. Further, American Honda asserts that *Getty Oil*'s unique circumstances of a one-time intercompany note associated with a merger and restructuring weighed in favor of nonbusiness-income classification. Thus, the circuit court's conversion of that circumstance into a general test was wrong, because such a test fails to consider whether transactions were in the regular course of the taxpayer's business. American Honda argues that this "unique, nonrecurrent event" test ignores the holding of the other Arkansas business/nonbusiness income case, *Pledger v. Illinois Tool Works, Inc.*, 306 Ark. 134, 812 S.W.2d 101 (1991). However, in *Illinois Tool*, we addressed for the first time the effect of the "unitary business principle" on Arkansas's UDITPA and did not apply either the transactional test or the functional test. Thus, we disagree with American Honda's position that the classification of income in *Getty Oil* as a "unique, nonrecurring event" amounted to a mere observation of facts. While a transaction or transfer that is a unique, nonrecurring event would cut against classifying the proceeds as business income, it follows

that the reverse is also true—a specific type of transaction that repeatedly occurs in the course of the taxpayer's business weighs in favor of classifying the income as business income.

Finally, we note that the parties dispute the validity of DFA's regulatory interpretation of "business income" as contained in Arkansas Corporation Income Tax Regulation 2.26-51-701. American Honda asks us to hold Regulation 2.26-51-701 void as applied. However, we decline to do so. Because we review the statute at issue de novo, we need not consider DFA's regulatory interpretation in our analysis. Simply put, we will determine what the statute means by construing it just as it reads, giving the words their ordinary and usually accepted meaning in common language. Pursuant to *Myers*, "[a]n unambiguous statute will be interpreted based solely on the clear meaning of the text. But where ambiguity exists, the agency's interpretation will be one of our many tools used to provide guidance." 2020 Ark. 135, at 5–6, 597 S.W.3d at 617. However, because no such ambiguity exists, we need not consider Regulation 2.26-51-701 and whether it is void as applied.

### III. *Sale of Environmental Credits*

We now turn to whether the circuit court properly granted summary judgment in favor of DFA by concluding that American Honda's sales of environmental credits constituted business income.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ark. R. Civ. P. 56(c). Ordinarily, on appeal from a summary-judgment

10

disposition, the evidence is viewed in the light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party. *Abraham v. Beck*, 2015 Ark. 80, 456 S.W.3d 744. However, when the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Id.* When parties file cross-motions for summary judgment, as was done in this case on this point, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. *Id.* As to issues of law presented, our review is de novo. *Id.*

We now consider whether the proceeds from American Honda's sale of six environmental credits during the 2015 tax year constitutes business income through satisfaction of either the transactional test or the functional test. The parties agree that, as set forth in *Getty Oil*, we have recognized the transactional and functional tests as being separate, standalone tests, either of which is enough to classify income as business income. As set forth above, the transactional test is found in the first part of the statutory definition of business income: "[I]ncome arising from transactions and activity in the regular course of the taxpayer's trade or business[.]" Ark. Code Ann. § 26-51-701(a).

American Honda argues that the transactional test of the definition has not been met. American Honda asserts that its regular course of business is distributing Honda vehicles and products. Thus, having a few regulatory personnel sell no-cost intangible assets to competitors for capital gain is not in the regular course of this business. We disagree. Applying the plain language of the first part of the Arkansas Code Annotated section 26-51-

701(a), the transactional test is satisfied. American Honda's income from the sale of environmental credits arose in the regular course of American Honda's business. Unlike the singular transfer of an intercompany note in *Getty Oil*, the sale of six environmental credits to five different vehicle manufacturers for $269,897,235 was not a unique, nonrecurring event. In fact, American Honda admitted that the proceeds generated from six environmental-credit sales during the 2015 tax year amounted to 86 percent of American Honda's federal taxable income for the 2015 tax period. While only the proceeds from the six environmental-credit sales during the 2015 tax year are at issue, we note that American Honda sold environmental credits during the tax years before and after the 2015 tax period. During the 2013 tax period, American Honda made one environmental-credit sale for proceeds of $2,898,000; during the 2014 tax period, American Honda made seven environmental credit-sales for proceeds of $35,765,203; and during the 2016 tax period, American Honda made five environmental-credit sales for $187,454,792. Thus, while American Honda's regular course of business is distributing Honda vehicles and products, it also maintains a regular course of business of selling environmental credits. In sum, we hold that the proceeds from the sale of six environmental credits satisfied the transactional test and are therefore business income. Because the transactional test has been satisfied, we need not consider the functional test. Although the circuit court improperly gave great deference to DFA's interpretation of the Tax Procedure Act, we hold that the circuit court correctly granted summary judgment in favor of DFA.

Affirmed.

*Dover Dixon Horne PLLC*, by:  *Matthew C. Boch*, *Michael G. Smith*, and *Adrienne M. Griffis*, for appellant.

*Lisa Ables*, *David G. Scott*, and *Bradley B. Young*, Office of Revenue Legal Counsel, for appellee.