Cite as 2026 Ark. 63

# SUPREME COURT OF ARKANSAS

**No.** CV–25–395

| | |
|---|---|
| JIM HUDSON, IN HIS OFFICIAL CAPACITY AS SECRETARY, ARKANSAS DEPARTMENT OF FINANCE AND ADMINISTRATION<br>APPELLANT | **Opinion Delivered:** April 16, 2026<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTEENTH DIVISION<br>[NO. 60CV-22-2158] |
| V. | HONORABLE SHAWN J. JOHNSON, JUDGE |
| UNITED STATES BEEF CORPORATION<br>APPELLEE | AFFIRMED. |

**SHAWN A. WOMACK, Associate Justice**

This tax appeal turns on a narrow question under Arkansas's pre-2026 version of the Uniform Division of Income for Tax Purposes Act (UDITPA): whether the gain US Beef realized from selling its entire business—particularly its intangible assets—was "business income," taxable in Arkansas, or "nonbusiness income," taxable to its commercial domicile, Oklahoma. The circuit court granted summary judgment to US Beef, holding the gain was nonbusiness income and properly taxed in Oklahoma. We affirm.

I.    *Facts and Procedural Background*

US Beef was incorporated in Oklahoma in 1973 and remained headquartered and commercially domiciled there through 2018. It owned and operated Taco Bueno and Arby's franchises in nine states, including Arkansas. Its regular operations included running those restaurant franchises and ensuring compliance with brand standards. Its support

functions—operations, marketing, recruiting, and information technology—were conducted in Oklahoma.

In September 2017, US Beef received an unsolicited offer to purchase its business. It culminated in two asset sales in December 2018. On or about December 5, US Beef sold the Arby's brand and restaurants to RB American Group, LLC. On or about December 14, it sold the Taco Bueno brand and restaurants to Quality Brand Management III, LLC. These transactions disposed of substantially all of US Beef's real estate and restaurant operations and ended its business. According to the affidavit of its president, Brett Pratt, US Beef had never before contemplated or engaged in such a transaction.

On its 2018 Arkansas corporate income tax return, US Beef treated the gains from the sales as nonbusiness income. It allocated gain from Arkansas real property to Arkansas, allocated gain from tangible personal property under Arkansas law, and allocated gain from intangible personal property—approximately $176.7 million—to Oklahoma, its commercial domicile. US Beef paid tax to Oklahoma on that intangible gain and filed an Arkansas return reflecting a refund due from previous estimated tax payments.

DFA denied the refund claim. In its January 15, 2020, notice of claim denial, DFA determined the transaction generated apportionable business income, not allocable nonbusiness income. US Beef appealed. The Office of Hearings & Appeals sustained the denial on April 12, 2021. US Beef then sought judicial relief in Pulaski County Circuit Court under Arkansas Code Annotated section 26-18-406(b) (Repl. 2020), requesting declarations that the gain could not be apportioned as business income under section 26-

2

51-701, that the gain did not constitute business income under the governing corporate-income-tax rule and that, alternatively, the rule itself was invalid.

US Beef moved for summary judgment. The parties agreed the transactional test was not at issue. The case thus turned on whether the gain qualified as business income under the functional test. After a hearing, the circuit court granted summary judgment to US Beef on March 10, 2025. The court held that the income from the sales constituted nonbusiness income under the statute, and it granted relief on US Beef's first two declarations, declining to reach the alternative challenge to the DFA rule. Final judgment followed, and DFA appealed.

## II.    *Standard of Review*

This court reviews a grant of summary judgment de novo.[1] Summary judgment is proper when the pleadings and supporting proof show no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[2] When, as here, the material facts are undisputed, the question is purely one of law. This court simply decides whether the appellee was entitled to judgment as a matter of law.[3] Questions of statutory interpretation are also reviewed de novo. And because this court has already held that the pertinent definition of "business income" in section 26-51-701(a) is unambiguous, the statute must be construed according to its plain text.[4]

---

[1]*Gates v. Hudson*, 2025 Ark. 48, at 6, 711 S.W.3d 142, 153; *Am. Honda Motor Co. v. Walther*, 2020 Ark. 349, at 10–11, 610 S.W.3d 633, 639.

[2]Ark. R. Civ. P. 56(c).

[3]*Am. Honda*, 2020 Ark. 349, at 11, 610 S.W.3d at 639.

III.    *Discussion*

The material facts are undisputed.  The dispute is legal.  Under the statute's text, as this court has interpreted it in *Pledger v. Getty Oil Exploration Co.*, 309 Ark. 257, 831 S.W.2d 121 (1992), *American Honda Motor Co. v. Walther*, 2020 Ark. 349, 610 S.W.3d 633, and *Hudson v. Murphy Oil USA, Inc.*, 2024 Ark. 179, 700 S.W.3d 891, the sale fails the functional test.  US Beef was in the business of owning and operating restaurant franchises—not disposing of them—as an integral part of its regular trade or business.  It was not in the business of going out of business.

Under the version of UDITPA governing tax year 2018, "business income" means income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from property if "the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business."  Ark. Code Ann. § 26-51-701(a) (Repl. 2020).  "Nonbusiness income" means "[a]ll income other than business income."  Ark. Code Ann. § 26-51-701(e).

This court has recognized that section 26-51-701(a) contains two tests: the transactional test and the functional test.[5]  Only the functional test is at issue here.  That test fails for a simple reason: although US Beef regularly acquired and managed its franchise assets, it did not regularly dispose of them as part of its business.

---

[4]*Id.* at 10, 610 S.W.3d at 638–39; *Myers v. Yamato Kogyo Co.*, 2020 Ark. 135, 597 S.W.3d 613.

[5]*Hudson v. Murphy Oil USA, Inc.*, 2024 Ark. 179, at 6, 700 S.W.3d 891, 896; *Am. Honda*, 2020 Ark. 349, at 8, 610 S.W.3d at 637; *Getty Oil*, 309 Ark. at 262, 831 S.W.2d at 124–25.

DFA concedes that the sale of US Beef's entire business was not a transaction in the regular course of its trade or business. That concession is correct. A complete exit from business is not an ordinary operating event. The appeal thus turns on whether the gain from the sale of US Beef's intangible assets satisfies the statute's second clause. It does not.

DFA's argument begins with a true premise but ends in the wrong place. The assets sold—brands, franchise rights, and related property—were central to US Beef's operations. But the statute does not ask only whether the property was important to the business. It asks whether "the acquisition, management, *and* disposition of the property" were integral parts of the taxpayer's regular trade or business. Ark. Code Ann. § 26-51-701(a) (emphasis added). The disposition element matters. The statute is conjunctive. Each verb does work, and a court may not delete one of them. That is where DFA's position breaks down.

US Beef regularly acquired and managed franchise assets as part of its restaurant-franchise business. But it did not regularly dispose of those assets as an integral part of that business. It had never before sold a franchise. It was not a trader, broker, or serial reseller of franchise systems. It owned and operated restaurants until it received unsolicited offers, sold substantially all its assets, and liquidated. That is a business-ending event, not a regular business operation.

This court's cases confirm that conclusion. In *Getty Oil*, the court held that accrued interest on a promissory note was nonbusiness income because the taxpayer was "not in the business of acquiring, managing, or disposing of this type of property."[6] The court

---

[6]*Getty Oil*, 309 Ark. at 263, 831 S.W.2d at 125.

emphasized that the inquiry turns on "the nature of the taxpayer's business."[7] That principle controls here. US Beef's business was operating restaurant franchises—not buying and selling entire franchise systems as an integral, recurring part of its business model.

*Murphy Oil* reinforces the same point.[8] In *Murphy Oil*, the court distinguished between income generated by regular business activity and income generated by atypical activity, holding that a one-time corporate financing event failed the functional test because it was not integral to the taxpayer's fuel-retailing business.[9] Selling the entire enterprise here is likewise a one-time event that ended US Beef's operations. It is not part of its regular business.

*American Honda* does not aid DFA.[10] There, proceeds from repeated sales of environmental credits constituted business income because the taxpayer had repeatedly engaged in those transactions and the credits were integrated into its ongoing operations.[11] That case illustrates a framework opposite of this one. Repetition and integration were present there; they are absent here. US Beef sold once and ceased operating.

DFA contends that the functional test "focuses on the income-producing property itself." That formulation does not match either the statute or this court's precedent. The statute does not say that gain is business income whenever the property sold was used in the

---

[7]*Id.* at 262, 831 S.W.2d at 124.

[8]*Murphy Oil*, 2024 Ark. 179, at 6, 700 S.W.3d at 896.

[9]*Id.* at 9–10, 700 S.W.3d at 897.

[10]*Am. Honda*, 2020 Ark. 349, at 12, 610 S.W.3d at 640.

[11]*Id.*

taxpayer's business. Had the General Assembly intended that to be the rule, it could have written it. Indeed, it later did something close to that. In 2025, the legislature amended the statute to include income from property if its "acquisition, management, employment, development, or disposition . . . is or was related to the operation of the taxpayer's trade or business." 2025 Ark. Acts 719, § 1 (codified at Ark. Code Ann. § 21-56-701 (Supp. 2025)). But that amendment applies prospectively to tax years beginning on or after January 1, 2026. Legislatures amend statutes to change meaning. If DFA's reading were already correct under the prior statute, the amendment would have done no work.

DFA also relies on its regulations, which state that gain from the sale of property constitutes business income if the property "was used in the taxpayer's trade or business." But that standard materially departs from the statute. It collapses the functional test into a broader inquiry about use. This court has rejected reliance on agency rules when the statute is unambiguous.[12] Agency rules cannot rewrite the statute.[13] They must yield to it.

Nor did the circuit court conflate the transactional and functional tests. DFA argues that the court's reliance on the one-time nature of the sale shows it applied the transactional test in disguise. The record does not support that claim. The court expressly recognized that the transactional test was not at issue. It then used the undisputed facts about US Beef's business to answer the functional-test question: whether the acquisition, management, and

---

[12]*Murphy Oil USA, Inc.*, 2024 Ark. 179, at 5, 700 S.W.3d 896 (citing *Am. Honda*, 2020 Ark. 349, at 5, 610 S.W.3d at 636).

[13]The dissent's improper reliance on the DFA regulation saying property "used in the taxpayer's trade or business" produces business income cannot trump an unambiguous statute. Diss. Op. at 5. *See* note 12, *supra.*

disposition of the property were integral parts of the taxpayer's regular trade or business. Frequency and regularity are relevant to that inquiry. A court cannot determine whether disposition is integral without identifying the taxpayer's regular trade or business. Here, US Beef regularly operated franchises; it did not regularly dispose of them.[14]

DFA's contrary rule would distort the statute's structure. On its view, any asset used in a taxpayer's business would generate business income when sold, regardless of whether its disposition was integral to the taxpayer's regular operations. That approach would eliminate the distinction between business and nonbusiness income and reduce the functional test to a simple "used in the business" inquiry. The statute says more than that. This enforces what the legislature wrote.[15]

---

[14]The dissent also contends that the majority improperly conflates the transactional and functional tests, asserting that "[o]nly the transactional test asks how often the business engaged in the activity." Diss. Op. at 2. But the statute's text directs otherwise. It requires that the "acquisition, management, and disposition" of property constitute "integral parts of the taxpayer's **regular** trade or business operations." Ark. Code Ann. § 26-51-701(a) (Repl. 2020) (emphasis added). The dissent's error lies in focusing solely on the word *integral* while overlooking the statute's equally important requirement that the activity be *regular*. Frequency is not used here as a standalone test; rather, it helps identify what constitutes the taxpayer's "regular trade or business," a determination inherent in the functional test itself.

[15]The bulk of the dissent's argument here is policy-driven rather than textual. It posits that Arkansas forfeits tax revenue when a business liquidates assets after previously benefiting from business-income deductions and therefore urges classification of the liquidation gain as business income. Diss. Op. at 5–6. But our role is to apply the statute as written, not to evaluate the wisdom of the General Assembly's policy choices. The pre-2026 version of Ark. Code Ann. § 26-51-701(a) required that the "acquisition, management, and disposition" of the property constitute "integral parts of the taxpayer's regular trade or business operations," and it does not treat prior income-producing use of the property as dispositive. The dissent's approach would effectively collapse the functional test into a broader rule that any asset once used in the business yields business income upon sale—a policy judgment reserved to the legislature and one more closely reflected in the statute's later amendment. Any perceived fiscal consequences of this interpretation are matters for legislative, not judicial, consideration.

8

Finally, the circuit court correctly declined to reach US Beef's alternative challenge to DFA's rule. Because the case can be resolved on the statute alone, there is no need to issue an advisory opinion on the validity of the regulation.

US Beef's gain from the sale of its intangible assets does not satisfy the functional test. Because it fails both tests, it is nonbusiness income. And because US Beef's commercial domicile was Oklahoma, the gain is allocable there under Arkansas Code Annotated section 26-51-706(c).

IV.    *Conclusion*

The circuit court correctly granted summary judgment to US Beef. Under the unambiguous text of Arkansas Code Annotated section 26-51-701(a) and this court's decisions in *Getty Oil*, *American Honda*, and *Murphy Oil*, the gain from US Beef's complete liquidation does not satisfy the functional test. US Beef was in the business of operating restaurant franchises, not regularly disposing of them. The gain from the sale of its intangible assets is therefore nonbusiness income allocable to Oklahoma, its commercial domicile.

Affirmed.

BAKER, C.J., and HUDSON and WOOD, JJ., dissent.

**RHONDA K. WOOD, Justice, dissenting.** I would hold that U.S. Beef's income from complete liquidation was apportionable to Arkansas as business income. Therefore, I would reverse and remand the circuit court's order granting U.S. Beef summary judgment.

9

On appeal, we are asked whether the proceeds from U.S. Beef's sale of its assets constitutes business income under the Uniform Division of Income for Tax Purposes Act.[1] The Act determines how multistate corporations pay Arkansas income tax.[2] Income generated by activity that is part of a business's regular activity and function is classified as "business income" and apportioned among the states in which the business operates.[3] At the time of the sale, the Act defined "business income" as follows:

> income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations.[4]

Arkansas uses both the transactional test and the functional test. Business income can arise from either inquiry: (1) transactions and activity in the regular course of the taxpayer's business [**transactional test**], or (2) income from the acquisition, management, and disposition of property that constitutes integral parts of the taxpayer's regular business [**functional test**].[5]

The majority states that it is applying the functional test but focuses on facts relevant to the transactional test, that is, U.S. Beef had never before liquidated its assets. Therefore,

---

[1]Ark. Code Ann. § 26-51-701 et seq. (Repl. 2020), subsequently amended by Act 719 of 2025. Business income is now defined as "apportionable income." *Id*. at § 1, codified at Ark. Code Ann. § 26-51-701(a) (Supp. 2025).

[2]*Hudson v. Murphy Oil USA, Inc.*, 2024 Ark. 179, at 5, 700 S.W.3d 891, 896.

[3]*Id*. at 6, 700 S.W.3d at 896.

[4]Ark. Code Ann. § 26-51-701(a) (Repl. 2020).

[5]*Pledger v. Getty Oil Expl. Co.*, 309 Ark. 257, 262, 831 S.W.2d 121, 124–25 (1992).

in its view, this "business-ending event" fails the functional test. But this analysis conflates the transactional test with the functional test. Only the transactional test asks how often the business engaged in the activity.[6] The functional test asks a different question: what role did the income-producing property play in the business?

Here, the property was the business, so it could not have been more *integral* to U.S. Beef's regular operations. Without the property, the business ceased. The majority focuses on whether disposition of property was a regular activity [transactional test] while ignoring the plain text that the "disposition of the property *constitutes integral parts* of the regular trade of business [functional test]." The majority's narrowing of the functional test means that Arkansas will forgo the tax benefit if a business ceases to operate and sells its property here after allowing it to reap the benefits of the tax deductions on that property.

Our recent cases clarify the distinction between the two tests. In *Murphy Oil*, the company's primary business was selling gas and snacks at retail-fueling stations. The company reorganized itself under a new corporate parent and incurred interest expenses to fund the transaction. We concluded that the corporate spin-off was an "extraordinary, nonrecurring event" and thus failed the transactional test.[7] Nor did it meet the functional test because it involved a corporate reorganization separate from the company's regular business of owning and operating convenience stores.

---

[6] *See, e.g.*, *Murphy Oil*, 2024 Ark. 179, at 9, 700 S.W.3d at 898 (holding that "once-in-a-corporate lifetime occurrences" fail the *transactional test*); *Getty Oil*, 309 Ark. at 263, 831 S.W.2d at 125 (holding that a "unique, non-recurring event" fails the *transactional* test).

[7] 2024 Ark. 179, at 7, 700 S.W.3d at 897.

In *Getty Oil*, we concluded accrued interest income from a promissory note held by a corporate subsidiary from the parent was nonbusiness income. First, we held the income did not meet the transactional test because the transfer was a "unique, nonrecurring event."[8] Next, we found it failed the functional test because Getty Oil was not in the business of holding intercompany notes.

But U.S. Beef's liquidation of its franchises and ending operations is a much different exercise from both these cases. From the start, all agree that liquidation did not occur in the "regular course" of U.S. Beef's business and fails the transactional test. Instead, we must decide whether the income meets the functional test. Did the income derive from the disposition of property that constituted "integral parts" of U.S. Beef's regular business? The functional test looks to the relationship of the assets to the business—the frequency of the transaction that produced the income is not relevant.[9] We ask whether the property disposed of had an integral part in the company's business; if so, income derived from its sale can be apportioned as business income.[10]

Other courts have held that liquidation proceeds satisfy the statutory definition of business income.[11] In *Jim Beam*, the company sold a subsidiary and characterized the proceeds as nonbusiness income. The California court rejected this characterization and held

---

[8]309 Ark. at 263, 831 S.W.2d at 125.

[9]Jerome R. Hellerstein, *State Taxation* ¶ 9.05.

[10]*See Harris Corp. v. Ariz. Dep't of Revenue*, 312 P.3d 1143, 1150 (Ariz. Ct. App. 2013).

[11]*E.g., Jim Beam Brands Co. v. Franchise Tax Bd.*, 133 Cal. App. 4th 514 (Cal. Ct. App. 2005); *Harris, supra.*

that the proceeds met the functional test because the company controlled the subsidiary, and it provided business income for years as an integral part of its operations.[12] In *Harris*, the Arizona Court of Appeals also found that gains from liquidation of a business line were business income. As the court held, "income from the disposition of property used in the trade or business is apportionable, even if it does not occur in the regular course of trade or business."[13]

Additionally, characterizing the gains as business income complies with DFA regulations. Those provide that "[g]ain or loss from the sale, exchange, or other disposition of real property or of tangible or intangible personal property constitutes business income if the property, while owned by the taxpayer, was used in the taxpayer's trade or business."[14] While not dispositive, we have noted that an agency's own interpretation can provide persuasive authority when the statutory text does not provide a clear answer.[15]

Further, expert commentary is persuasive. Assets that produce business income should also themselves be a source of business income if sold:

> If a taxpayer used an asset in a trade or business, there is no reason as a matter of principle why income generated by the disposition of that asset should be treated any differently from the income the asset generated while used in the taxpayer's trade or business, namely, apportioned among the states in which the business was conducted.[16]

---

[12]133 Cal. App. 4th at 527.

[13]312 P.3d at 1149.

[14]26 CAR § 130–35(b)(5)(A).

[15]*See Myers v. Yamato Kogyo Co., Ltd.*, 2020 Ark. 136, at 6, 597 S.W.3d 613, 617.

[16]*Hellerstein*, *supra*.

13

U.S. Beef without question used the sold assets in its trade and business—in fact, the *assets were* its trade and business. Selling the assets does not remove the sale from U.S. Beef's regular business. Cashing out for profit constitutes the *ne plus ultra* of doing business.

It also makes sense that Arkansas would treat the gains from the sale as business income. Why should taxpayers be able to deduct business expenses from owning tangible and nontangible property from its apportionable taxable income and then, once the property is sold, characterize the sale as nonbusiness, and therefore nonapportionable taxable income?

> [I]nsofar as gain from the disposition of property used in the taxpayer's business represents recoupment of expenses deducted from apportionable income while the property was used in the business (e.g., depreciation, advertising, and research and development expenses), it lends additional support to adoption of the functional test.
>
> It would be incongruous (and, from the state's standpoint, inequitable) for a taxpayer to be able to reduce in-state apportionable income through depreciation or other deductions while the asset was being used in the trade or business and then, when the asset is sold, to avoid "recapture" of that income in the state by treating the income from the sale as non-business income allocable to another state.[17]

Such is the case here. From 2015 through 2017, U.S. Beef deducted business expenses from its intangibles on its Arkansas corporate-tax return. Yet in 2018, when U.S. Beef liquidated, it reported both income and nonbusiness income from the same intangibles.

To summarize: Arkansas recognizes both the transactional test and the functional test. Only the former test focuses on the nature of the transaction as a unique occurrence. The functional test asks a different question. And if the disposed-of property had been producing business income before liquidation, then the gains from liquidation should be classified as business income, too. The majority has allowed U.S. Beef to benefit from the business-

---

[17]*Id.*

income deductions in the tax years leading up to the sale, only to reclassify it as nonbusiness income once disposed of. I would hold that income from the liquidation of U.S. Beef's assets satisfied the functional test.

As the circuit court incorrectly granted U.S. Beef's motion for summary judgment, I would reverse and remand.

BAKER, C.J., and HUDSON, J., join.

*Bradley B. Young*, *Lisa Ables*, and *Kevin Christian*, Office of Revenue Legal Counsel, for appellant.

*Kilpatrick Townsend & Stockton LLP*, by: *Jordan M. Goodman*, *Matthew R. Barrett*, and *Jesse Feinstein*, pro hac vice; *Mitchell, Williams, Selig, Gates and Woodyard, PLLC*, by: *Anton L. Janik, Jr.*, for appellee.