Cite as 2022 Ark. 160

# SUPREME COURT OF ARKANSAS
**No.** CV-22-439

|  |  |
|---|---|
|  | **Opinion Delivered:** September 22, 2022 |
| JODY HARRIS <br>               APPELLANT <br><br> V. <br><br> CRAWFORD COUNTY BOARD OF ELECTION COMMISSIONERS; BILL COLEMAN, IN HIS OFFICIAL CAPACITY AS CHAIRMAN; MIKE MOXLEY, IN HIS OFFICIAL CAPACITY AS COMMISSIONER; MEMORY BOUCHER, IN HER OFFICIAL CAPACITY AS COMMISSIONER; AND CHAD PURYEAR <br>               APPELLEES | APPEAL FROM THE FRANKLIN COUNTY CIRCUIT COURT [NO. 24OCV-22-60] <br><br> HONORABLE DENNIS CHARLES SUTTERFIELD, JUDGE <br><br><br> <u>AFFIRMED IN PART; REVERSED AND REMANDED IN PART</u>. |

**COURTNEY RAE HUDSON, Associate Justice**

Appellant Jody Harris appeals from the Franklin County Circuit Court's dismissal of her complaint challenging the certification of the House District 25 ("HD 25") Republican primary race by appellee Crawford County Board of Election Commissioners ("CBEC").[1] Harris argues that the circuit court abused its discretion by (1) dismissing her complaint based on lack of jurisdiction and improper venue and (2) denying her motion to transfer the case to Crawford County. We affirm in part and reverse and remand in part.

---

[1]Harris also named Bill Coleman, the Chairman of the CBEC, and Commissioners Mike Moxley and Memory Boucher as defendants in their official capacities only.

Harris and appellee Chad Puryear both sought the Republican Party's nomination for the HD25 seat in the May 24, 2022 preferential primary election. HD25 encompasses portions of Crawford, Franklin, and Washington Counties. On June 1, 2022, the CBEC certified that Harris received 712 votes, while Puryear received 740 votes. The certified results from all three counties in the district resulted in 2204 votes for Harris and 2211 votes for Puryear.

On June 14, 2022, Harris filed a complaint in the Franklin County Circuit Court contesting the CBEC's certification. She alleged election-law violations and irregularities with regard to the CBEC's handling of certain absentee ballots and claimed that the HD25 Republican primary election results were unreliable. Harris prayed that the circuit court void the CBEC's certification of the HD25 race or void the HD25 election.

Puryear filed a motion to dismiss the suit on July 1, 2022, asserting, among other grounds for dismissal, that the Franklin County Circuit Court lacked jurisdiction and that venue was improper pursuant to Arkansas Code Annotated section 7-5-801(b) (Repl. 2018). Puryear argued that the action should have been filed in Crawford County instead because that is where the alleged wrongful acts occurred. The CBEC filed an answer denying the allegations in Harris's complaint and also joined in Puryear's motion to dismiss.

Following a hearing held on July 15, 2022, the circuit court entered an order on July 18 granting the motion to dismiss. The court found that Harris's complaint was not filed in the proper county, that it had no jurisdiction to hear the matter, and that venue was improper. The circuit court also denied Harris's oral motion to transfer the case to Crawford County. Harris filed a timely notice of appeal from the circuit court's order. On July 20,

2

2022, Harris filed a motion to expedite the appeal, which this court granted on July 27, 2022.[2]

On appeal, Harris first argues that the circuit court erred by dismissing her complaint. She contends that the circuit court incorrectly interpreted Arkansas Code Annotated section 7–5–801(b) to not allow her to bring her postelection contest in Franklin County. Section 7–5–801 provides as follows:

> (a) A right of action is conferred on any candidate to contest the certification of nomination or the certificate of vote as made by the appropriate officials in any election.
> (b) The action shall be brought in the circuit court of the county in which the certification of nomination or certificate of vote is made when a county or city or township office, including the office of county delegate or county committee member, is involved, and except as provided in this subchapter, within any county in the circuit or district wherein any of the wrongful acts occurred when any circuit or district office is involved, and except as provided in this subchapter, in the Pulaski County Circuit Court when the office of United States Senator or any state office is involved.
> (c) If there are two (2) or more counties in the district where the action is brought and when fraud is alleged in the complaint, answer, or cross-complaint, the circuit court may hear testimony in any county in the district.
> (d) The complaint shall be verified by the affidavit of the contestant to the effect that he or she believes the statements to be true and shall be filed within twenty (20) days of the certification that is the subject of the complaint.
> (e) The complaint shall be answered within twenty (20) days.

We review issues of statutory interpretation de novo, as it is for this court to determine what a statute means. *Mississippi Cnty. v. City of Blytheville*, 2018 Ark. 50, 538 S.W.3d 822. The primary rule of statutory interpretation is to give effect to the intent of the legislature. *Keep Our Dollars in Independence Cnty. v. Mitchell*, 2017 Ark. 154, 518 S.W.3d 64. We construe the statute just as it reads, giving the words their ordinary and usually

---

[2]On August 4, 2022, appellees filed a joint motion to dismiss the appeal as moot. We denied the motion by syllabus entry on September 15, 2022.

accepted meaning in common language. *Id.* Where the language is plain and unambiguous, this court determines legislative intent from the ordinary meaning of the language used. *White v. Owen*, 2021 Ark. 31, 617 S.W.3d 241. Statutory language is ambiguous if it is open to two or more constructions, or if it is of such obscure and doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Arkansas Dep't of Corr. v. Shults*, 2017 Ark. 300, 529 S.W.3d 628. When a statute is ambiguous, this court must interpret it according to legislative intent, and our review becomes an examination of the whole act. *Id.* In addition, we must look at the legislative history, the language, and the subject matter involved. *Mississippi Cnty.*, *supra*.

The parties agree that HD25 is a district office for purposes of section 7-5-801(b). Thus, the dispute in this case centers on the proper interpretation of the language in subsection (b) stating that "[t]he action shall be brought in the circuit court . . . within any county in the circuit or district wherein any of the wrongful acts occurred . . . ." Ark. Code Ann. § 7-5-801(b). Harris argues that the clause "wherein any of the wrongful acts occurred" refers to "the circuit or district," while appellees contend that it refers to "any county."

We agree that this statutory language is open to two constructions and is therefore ambiguous. Further, each interpretation is supported by a different canon of construction. According to the "last-antecedent canon," the clause "wherein any of the wrongful acts occurred" typically refers to the word or phrase that is nearest to it—"the circuit or district" in this case. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 144 (2012). However, the "surplusage canon" states that every word and provision in a

statute are to be given effect if possible and that no statutory provision should be given an interpretation that causes it to be redundant or to have no consequence. *Id.* at 174; *see also Barton Land Servs., Inc. v. SEECO, Inc.*, 2013 Ark. 231, at 8, 428 S.W.3d 430, 436 ("We construe the statute so that no word is left void, superfluous, or insignificant, and we give meaning and effect to every word in the statute, if possible."). As appellees assert, the construction of section 7-5-801(b) urged by Harris would render the clause "wherein any of the wrongful acts occurred" superfluous and insignificant. If this language was removed, subsection (b) would still have the same meaning. Specifically, if an election contest could be brought in any county in the district regardless of whether wrongful acts occurred in that county, there would be no reason for the General Assembly to insert the words "wherein any of the wrongful acts occurred." Rather, the legislature would have drafted section 7-5-801(b) to state, "The action shall be brought in the circuit court . . . within any county in the circuit or district . . . when any circuit or district office is involved . . ."

The interpretation argued by appellees and accepted by the circuit court in this case is also supported by our prior cases interpreting section 7-5-801(b). In *Simes v. Crumbly*, 368 Ark. 5, 242 S.W.3d 600 (2006), the plaintiff filed an election contest in Pulaski County alleging that there were uncounted votes in Phillips County during the 2006 Democratic preferential primary for the office of state senator for District 16. We affirmed the circuit court's dismissal for failure to comply with the statutory requirements in section 7-5-801(b), holding that the correct forum for the election contest was in Phillips County "because that is the county of District 16 where wrongful acts were alleged to have occurred." *Id.* at 4, 242 S.W.3d at 612. In reaching that conclusion, we stated that pursuant to section 7-5-

5

801(b), "an election contest concerning a district office is to be brought within 'any county . . . wherein any of the wrongful acts occurred when any. . . district office is involved . . . .'" Also, in *Willis v. Crumbly*, 368 Ark. 5, 242 S.W.3d 600 (2006), a companion case concerning the runoff election for state Senate District 16, the plaintiff filed a petition in St. Francis County alleging that voter fraud had occurred there. The circuit court dismissed the action, stating that the office of state senator was a "state office," which has to be filed in Pulaski County, and that the plaintiff had failed to join the Secretary of State and State Democratic Committee as necessary and indispensable parties. *Id.* at 7–8, 242 S.W.3d at 602. This court reversed, holding that under section 7-5-801(b), the office of state senator is a district office, the Secretary of State and state political party are not required to be joined as parties, and "the venue for this case is proper in St. Francis County, as that is the county within the circuit or district where the alleged wrongful acts occurred." *Id.* at 13, 242 S.W.3d at 606.

We did, however, interpret the language at issue in the manner argued by Harris in *Morrow v. Strait*, 186 Ark. 384, 53 S.W.2d 857 (1932), which involved a predecessor statute to section 7-5-801(b). In *Morrow*, the plaintiff filed an action in Johnson County contesting the results of the Democratic primary election for the office of prosecuting attorney in the Fifth Judicial Circuit. *Id.* The complaint alleged wrongdoing only with regard to the elections in Conway and Pope Counties. *Id.* We affirmed the circuit court's denial of a motion to dismiss in which it was argued that the suit should have been brought in Pulaski County. *Id.* We held that "the suit was one which could have been brought in any county

6

within that circuit, and was properly brought in Johnson County, one of the counties comprising the Fifth Judicial Circuit." *Morrow*, 186 Ark. at 388, 53 S.W.2d at 858.

We hold that this court's interpretation of the relevant statutory language in *Simes*, *supra*, and *Willis*, *supra*, is more persuasive. Not only does this interpretation conform to the surplusage canon described above, but also, *Simes* and *Willis* are more recent decisions analyzing the same statute as in the current case. It is well settled that our interpretation of a statute subsequently becomes a part of the statute itself. *State v. Griffin*, 2017 Ark. 67, 513 S.W.3d 828. The legislature is presumed to be familiar with our interpretation of a statute, and if it disagrees with that interpretation, it can amend the statute. *Id.* Furthermore, this construction is consistent with the purpose of section 7-5-801, which is to facilitate the quick resolution of an election contest by requiring that the action be filed in a county wherein the wrongful acts allegedly occurred and the relevant witnesses and evidence are most likely to be located. *See Willis v. King*, 352 Ark. 55, 98 S.W.3d 427 (2003) (stating that the Election Code was designed to resolve election disputes expeditiously and summarily).

Harris contends that the legislature would have used "the county" rather than "a county" in section 7-5-801(b) if it intended the election contest to be filed only in the particular county wherein wrongful acts were alleged. As Puryear points out, however, it is also reasonable that the legislature's choice of the word "any" was intended to allow an election suit alleging wrongful acts in multiple counties of a district to be brought in any one of those counties. Thus, Harris's argument is not convincing. Although Harris also claims that section 7-5-801 must be construed liberally, we have applied a liberal interpretation of election statutes only when analyzing the sufficiency of a complaint's

7

allegations and not to other statutory requirements such as venue or time limitations. *See, e.g., Willis v. King, supra* (rejecting substantial compliance with affidavit requirement of section 7-5-801); *King v. Whitfield*, 339 Ark. 176, 5 S.W.3d 21 (1999) (applying liberal construction to factual allegations in complaint). Finally, Harris's contention that section 7-5-801(c) supports her interpretation of the statute is also without merit, as that subsection merely states that a circuit court may "hear testimony" in any county in the district when fraud is alleged in the complaint; it does not speak to the proper forum for filing the election contest. Accordingly, Harris incorrectly filed her postelection contest in Franklin County rather than in Crawford County, wherein the alleged wrongful acts occurred, and we affirm the circuit court's ruling on this point.

Harris next argues that even if the circuit court correctly determined that Franklin County was not the proper venue for her suit, the court abused its discretion by denying her motion to transfer the case to Crawford County. At the conclusion of the hearing before the circuit court, Harris orally requested that the court transfer her suit to Crawford County. The circuit court denied her request and explained, "I don't think I'm authorized to. This is a special proceeding. I don't think it authorizes me to transfer venue." Consistent with that oral ruling, the circuit court stated in its written order dismissing the suit that "[t]his Court is not authorized by statute or other authority to transfer this election contest."

With regard to motions to dismiss based on subject-matter jurisdiction and venue, Arkansas Rule of Civil Procedure 12(h)(3) provides as follows:

> (3) Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action. Upon a determination that venue is improper, the court shall dismiss the action or direct that it be transferred to a county where venue would be

proper, with the plaintiff having an election if the action could be maintained in more than one county.

On appeal from the denial of a motion to transfer, we do not reverse the circuit court in the absence of an abuse of discretion. *Bethany v. Jones*, 2011 Ark. 67, 378 S.W.3d 731. An abuse of discretion occurs when the circuit court exercises its discretion thoughtlessly and without due consideration. *Travelers Indem. Co. v. Bd. of Trs. of the Univ. of Ark.*, 2022 Ark. 146, 646 S.W.3d 361. In addition, we have held that an abuse of discretion may be manifested by an erroneous interpretation of the law. *Id.*

Here, under the plain language of Rule 12(h)(3), the circuit court had the authority to decide whether to dismiss Harris's suit upon its determination that venue was improper or transfer it to Crawford County. While election contests are special proceedings, we have held that the rules of civil procedure still apply to those proceedings in the absence of a different procedure set forth in the election statute. *Baker v. Rogers*, 368 Ark. 134, 243 S.W.3d 911 (2006). Section 7-5-801(b) governs the proper forum for a postelection contest; however, it contains no language supplanting Rule 12(h)(3), which gives the circuit court the discretion to transfer the action to a county where venue would be proper. Therefore, the circuit court erroneously concluded that it lacked the authority to transfer this matter, and we reverse and remand for the circuit court to utilize its discretion in determining whether to grant Harris's motion to transfer.

Affirmed in part; reversed and remanded in part.

Mandate to issue immediately.

Special Justice WENDY SCHOLTENS WOOD joins.

WOOD and WOMACK, JJ., dissent.

WEBB, J., not participating.

9

**RHONDA K. WOOD, Justice, dissenting.** This lawsuit was properly filed in Franklin County—a county within the legislative district—even though the alleged wrongdoing happened in Crawford County. In 1932, we interpreted the relevant statutory language about venue to reach an identical result. That interpretation has become one with the statute itself because the legislature has never repudiated it. To reach a contrary result, the majority relies on two inapposite cases that never addressed a venue dispute (like the one here) between two counties within the same district. I would instead follow relevant precedent and legislative history and find that venue was proper. I respectfully dissent.

We first look at the statutory language for the clear meaning of section 7-5-801(b) (Repl. 2018). In relevant part, the statute provides the following:

> The action shall be brought . . . within any county in the circuit or district *wherein* any of the wrongful acts occurred when any circuit or district office is involved.

(Emphasis added.) The statute's meaning turns on the word "wherein." Wherein serves as a relative pronoun in this sentence because it modifies a noun.[1] The parties disagree over which noun the relative pronoun "wherein" modifies: Does wherein modify "county" or does it modify "circuit or district"?

To resolve this question, the court should begin by applying the last-antecedent rule. This is the primary grammatical rule applicable to determining which noun a relative pronoun modifies; under the rule, a relative pronoun modifies its closest antecedent. A.

---

[1] *See Chicago Manual of Style* § 5.187, at 193 (15th ed. 2003) ("Relative pronouns . . . may be treated as a special class of subordinating conjunctions when they join sentences."). "Wherein" acts here as a conjunction meaning "in which" or, simply, "where." *Black's Law Dictionary* 1830 (10th ed. 2014).

Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 144 (2012); *Myers v. Yamato Kogyo Co.*, 2020 Ark. 135, at 9, 597 S.W.3d 613, 619. Applying that rule, "wherein" modifies "circuit or district" rather than "county" because "circuit" and "district" are the closest antecedents. Under this rule of grammar, this lawsuit could have been brought in any of the counties in the district, not just the one where the wrongdoing occurred.

But this does not mean we ignore all other rules of construction. We must consider the last-antecedent rule alongside other interpretive tools. 2A *Sutherland Statutory Construction* § 47:33 (7th ed.). And the majority is correct to consider whether an interpretation would render words in the statute superfluous.

I agree with the majority that application of the last-antecedent rule to this statute renders the relative clause "wherein any of the wrongful acts occurred" superfluous. Thus, at this stage, I would find the statute ambiguous because these competing rules of textual interpretation produce different results about the statute's plain meaning. When the last-antecedent rule makes some of the statute's words superfluous, courts have found the statute ambiguous.[2]

When a statute is ambiguous, in addition to canons of interpretation, we look to legislative history and original purpose. *See Walther v. FLIS Enters., Inc.*, 2018 Ark. 64, at 6, 540 S.W.3d 264, 268. The statutory language entered Arkansas's law books as an initiated act in 1916. The law provided that a cause of action challenging a certification of nomination

---

[2]*See, e.g.*, *United States v. Ashurov*, 726 F.3d 395, 400 (3d Cir. 2013) (finding statutory ambiguity because of a conflict between the last-antecedent rule and the rule against surplusage); *Ryan Contracting Co. v. O'Neill & Murphy, LLP*, 883 N.W.2d 236, 244 (Minn. 2016) ("We must determine whether the application of the last-antecedent rule would render any language in the statute superfluous.").

or certification of vote "shall be brought in the circuit court." Init. Measure of 1916, No. 1, § 12, Acts 1917, 2287. The law then provided the action's venue as follows: "if for a circuit or district office, within any county in the circuit or district wherein the wrongful acts occurred." *Id*. This Act was subsequently compiled in Crawford and Moses' Digest as section 3772.

This court then interpreted the statute in 1932. *See Morrow v. Strait*, 186 Ark. 384, 53 S.W.2d 857 (1932). In that case, an election challenge was brought regarding the Democratic primary for prosecuting attorney of the Fifth Judicial Circuit. That circuit covered Conway, Pope, Yell, and Johnson Counties. The wrongdoing was alleged to have occurred in Pope and Conway Counties. But the lawsuit was filed in Johnson County— wherein no wrongdoing occurred, but still within the district. A motion to dismiss was filed arguing Pulaski County was the correct venue. On appeal, we affirmed the denial of the motion to dismiss, citing section 3772: "We are of the opinion . . . that the suit . . . could have been brought in *any county within that circuit*, and was properly brought in Johnson County, one of the counties comprising the Fifth Judicial Circuit." *Id*. at 388, 53 S.W.2d at 858. To emphasize, the court affirmed the action continuing in Johnson County, which was not the county "wherein the wrongful acts occurred."

In essence, this court in *Morrow* construed the election-challenge venue statute to mean that a challenge can be brought in any county that is part of a district office, even if no wrongdoing occurred in that county. The court specifically affirmed a denial of a motion to dismiss challenging venue in a county where no wrongdoing occurred. Our interpretation in *Morrow* has become part of the statute; it remains the law until the General

12

Assembly sees fit to amend it. *Ark. State Police v. Keech L. Firm, P.A.*, 2017 Ark. 143, at 3, 516 S.W.3d 265, 267.

The General Assembly's behavior following *Morrow* reaffirms this view. The law was officially annotated in 1947.[3] Section 3772 of Crawford and Moses' Digest became Arkansas Statutes Annotated section 3-245. The law was also slightly rearranged, with its initial dependent clause being moved to the end:

> The action shall be brought . . . within any County in the Circuit or District wherein any of the wrongful acts occurred when any Circuit or District Office is involved.

Careful observers will note this statute is identical to the present one. It remained this way until 1969, when the legislature passed a new election-law regime. This law was titled "An Act to Codify the Election Laws of the State of Arkansas." This Act repealed many extant election-law statutes, including section 3-245. *See* Act 465 of 1969, art. 13, § 9. But the Act then readopted, in identical terms, the language from Ark. Stat. Ann. § 3-245. *Id.* art. 10, § 1. And that language remains the same today in its current incarnation as Arkansas Code Annotated section 7-5-801.

These legislative events clarify the statute's purpose and legislative intent, as opposed to this court's guesswork at legislative purpose. We interpreted the relevant statutory language in 1932, which was only sixteen years after the law itself was adopted. The *Morrow* court was in a much better position than we are now to understand the original intent

---

[3]"The General Assembly established the Arkansas Statute Revision Commission in 1945 to provide for the creation and publication of what has become known as the Arkansas Statutes of 1947 Annotated." Vincent C. Henderson, *The Creation of the Arkansas Code of 1987 Annotated*, 11 U. Ark. Little Rock L.J. 21, 21 (1988).

behind the 1916 Initiated Act of the people of Arkansas. Moreover, not only has the legislature not amended the statute, but it also readopted the same language in 1969 with the *Morrow* interpretation incorporated. The legislature is presumed to be aware of our *Morrow* decision. *Miller v. Enders*, 2013 Ark. 23, at 12, 425 S.W.3d 723, 730. Given that understanding, the legislature embraced the venue language and readopted it word-for-word, suggesting it conformed exactly with its intent. The *Morrow* interpretation remains controlling today.

The majority's reasoning for reaching the opposite result is troubling. First, the majority places the rule against surplusage over the last-antecedent rule. But the court should not privilege one over the other. Our role is more complex than that. The conflict between the two rules creates the statutory ambiguity we must resolve. To resolve it, we must examine legislative intent and history. Choosing the surplusage canon as controlling without considering the relevant history leaves our job of statutory interpretation half done.

Second, the majority argues two cases from 2006 compel a different result. *See Simes v. Crumbly*, 368 Ark. 1, 242 S.W.3d 610 (2006); *Willis v. Crumbly*, 368 Ark. 5, 242 S.W.3d 600 (2006). But neither case overruled the *Morrow* holding that any county in the district would have been a permissible venue. The pertinent dispute in both cases involved whether the office of state legislator was a "state office" such that an election challenge must be brought in Pulaski County or a "district" office that must be brought within the district. Both cases concluded that the office was a district office and that the challenges should have been brought within the district. Indeed, the *Simes* court even cited the *Morrow* case for a different proposition, suggesting a familiarity with the *Morrow* opinion's substance. 368 Ark.

14

at 3, 242 S.W.3d at 611. If the *Simes* opinion and the *Morrow* opinion conflicted, the *Simes* court could have said so.

The majority states that the legislature could have acted if it disagreed with *Simes* or *Willis*. But this position ignores the fact that the legislature did act after the *Morrow* holding and retained the same grammatical structure. More importantly, the legislature had neither case before it in 1969 when *Morrow* provided the still-controlling interpretation of the statute. I submit that the court should place more weight on the legislature's affirmative step of readopting this court's interpretation in *Morrow* rather than placing weight on legislative inaction following *Simes* and *Willis*.

Last, the majority reasons that bringing the action in the county where the wrongdoing occurred promotes quick resolution of election contests. But this was not mentioned by this court in 1932 as a concern to the people behind the Initiated Act of 1916. Presumably, in 1932, it would have been even more time consuming to bring actions in other counties given the state of intercounty transportation. Surely the *Morrow* court, just over a decade removed from the Act, would have understood this when interpreting the statutory language. It would have known if speed was the law's purpose.

To summarize: Arkansas Code Annotated section 7–5–801(b) is ambiguous. Grammatically, the relative pronoun should be read as modifying the closest noun, which would mean the challenge could be brought in any county within the district. And although this renders part of the language superfluous, statutory history and controlling caselaw support this reading of the statute. *Morrow* has been on the books for ninety years. The legislature enacted the current law knowing the *Morrow* interpretation would control. I

would hold that an election challenge for a district office can be brought in any county within the district, even if no wrongdoing was alleged to have occurred there.

**SHAWN A. WOMACK, Justice, dissenting.** Venue is proper in Franklin County pursuant to Arkansas Code Annotated section 7-5-801(b). Section 801(b) provides that election contests "shall be brought in . . . any county in the circuit or district wherein any of the wrongful acts occurred." Ark. Code Ann. § 7-5-801(b). When interpreting a statute, this court will "construe [the statute] just as it reads, giving the words their ordinary and usually accepted meaning in common language[;] . . . *no word is left void, superfluous or insignificant.*" *City of Little Rock v. Rhee*, 375 Ark. 491, 495, 292 S.W.3d 292, 294 (2009) (emphasis added). By immediately following "circuit" and "district," "wherein the wrongful acts occurred" modifies the two. *See Myers v. Yamato Kogyo Co., Ltd.*, 2020 Ark. 135, at 9, 597 S.W.3d 613, 619 (applying the last-antecedent rule, which discusses how "a limiting phrase following a list of terms or phrases should ordinarily be read as modifying only the noun or phrase that it immediately follows") (internal quotation marks omitted).

The phrase is not superfluous because it limits the venue for election contests to a certain circuit or district. Id. The General Assembly has the constitutional authority to set venue, whether it be in a certain county, several counties, or statewide. Ark. Const. amend. 80, § 10. That is precisely what the General Assembly has done here: require election contests to be filed within the district where the alleged wrongful acts occurred but allow the contests to proceed in any county within that district. *See* Ark. Code Ann. § 7-5-801(b). Because no part of section 801(b) is superfluous, I would end my analysis with the

16

application of the last-antecedent rule. As a result, I would hold that Harris properly filed her election contest in Franklin County because it is a county within the election district.

I respectfully dissent.

*Lancaster Law Firm, PLLC*, by: *Clinton W. Lancaster*, for appellant.

*Wahlmeier Law Firm, P.A.*, by: *Gentry C. Wahlmeier*, for appellees Crawford County Board of Election Commissioners and Commissioners in their official capacities.

*Brister Law Firm, PLLC*, by: *M. Sean Brister*; and *Steel, Wright, Gray* PLLC, by: *Alec Gaines* and *Nate Steel*, for appellee Chad Puryear.