Cite as 2024 Ark. 179

# SUPREME COURT OF ARKANSAS

No. CV–24–8

|  |  |
|---|---|
| | **Opinion Delivered:** December 12, 2024 |
| JIM HUDSON, IN HIS OFFICIAL CAPACITY AS SECRETARY AND DIRECTOR OF THE ARKANSAS DEPARTMENT OF FINANCE AND ADMINISTRATION | APPEAL FROM THE UNION COUNTY CIRCUIT COURT [NO. 70CV-20-84] |
| APPELLANT | HONORABLE SPENCER G. SINGLETON, JUDGE |
| V. | |
| MURPHY OIL USA, INC. | AFFIRMED. |
| APPELLEE | |

**RHONDA K. WOOD, Associate Justice**

This appeal involves an application of Arkansas's version of the Uniform Division of Income for Tax Purposes Act (UDITPA). Murphy Oil USA (Murphy) and the Arkansas Department of Finance and Administration (DFA)[1] dispute the categorization of interest

---

[1]Appellant is Jim Hudson acting in his official capacity as Secretary of the Department of Finance and Administration. We refer to appellant as DFA for simplicity.

We note that the complaint was originally filed in 2020 against Larry Walther, in his official capacity as the then-Secretary of the Department of Finance and Administration. As noted in the circuit court's August 18, 2023 Order (granting additional time to lodge the appellate record), Secretary Hudson succeeded prior Secretary Larry Walther on August 7, 2023. Pursuant to Rule 12(d)(1) of the Arkansas Rules of Appellate Procedure-Civil, when a public officer is a party to an action in his or her official capacity and during its pendency resigns or ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party. Ark. R. App. P.-Civ. 12(d)(1) (2023). Proceedings following the substitution shall be in the name of the substituted party. *Id.; see also Fisher v. Chavers*, 351 Ark. 318, 319 (2002).

expenses related to a corporate spin-off. The circuit court held that Murphy could amend its tax returns and allocate 100 percent of certain interest expenses in Arkansas, its domicile state, rather than apportion them among all the states where Murphy conducts business. This resulted in an Arkansas tax refund of almost $4 million. But on appeal, DFA argues we should reverse on the basis of three alternative theories: (1) Murphy's interest expenses were business-income expenses under the UDITPA and thus properly apportioned on the original tax returns; (2) if the expenses were 100 percent allocable to Arkansas, then a state statute makes them nondeductible; or (3) it is unfair to allow Murphy this tax-refund windfall in Arkansas when it has yet to amend returns in other states. We affirm the circuit court's grant of summary judgment to Murphy.

I. *Facts*

The material facts are not in dispute. Murphy is in the primary business of selling retail motor-fuel products and convenience-store items through its retail-fueling stations. Prior to 2013, Murphy was a subsidiary of the parent company Murphy Oil Corporation (Murphy Corp.). In 2013, Murphy spun off from its prior parent company and became a subsidiary of a new parent company, Murphy USA, Inc. (Murphy USA). The 2013 spin-off was the first and only time this occurred since Murphy's incorporation in 1992. The image below represents the change.



To fund this spin-off, Murphy USA made a $650 million distribution to Murphy Corp. using funds received from its new subsidiary, Murphy. Murphy obtained the $650 million for this spin-off by issuing $500 million in senior notes and borrowing another $150 million in credit agreements to pay Murphy USA. Thus, Murphy did not use any proceeds from the borrowed funds to finance Murphy's retail-fueling operations. Murphy paid interest on both the senior notes and the credit agreements, resulting in interest expenses. For the tax years 2014 and 2015, all of Murphy's interest expenses were related to this debt. The following images assist in explanation.



As of 2015, Murphy had retail-fueling stations in twenty-four states, but its domicile state is Arkansas. This required Murphy to apportion its income among these other states when paying corporate income tax. At first, Murphy apportioned and deducted these interest expenses from its corporate income in all the states in which it conducted business.

This meant only some of the interest expenses were deducted from the corporate taxes Murphy paid to the State of Arkansas. But in 2018, Murphy amended its Arkansas tax returns for tax years 2014 and 2015. Those returns now deducted all these interest expenses from corporate income tax paid to Arkansas. These amended tax returns resulted in Murphy seeking an Arkansas tax refund of more than $2 million dollars for the 2014 tax year and a little less than $2 million for the 2015 tax year.

DFA denied the refund for reasons that have shifted throughout this process. Murphy brought an administrative appeal. The hearing officer upheld DFA's denial, and the Commissioner of Revenue agreed. Murphy sought judicial review of DFA's decision in circuit court. The parties cross-moved for summary judgment. The circuit court granted summary judgment for Murphy and denied DFA's motion. DFA appeals and we affirm.

## II. *Argument*

On appeal, DFA makes three alternative arguments to reverse the circuit court's order and to deny Murphy's entitlement to a tax refund. It contends that (1) Murphy's interest expenses are apportionable to business income under the UDITPA as originally filed;[2] (2) alternatively, the interest expenses are not deductible at all; or (3) we should deny Murphy's entitlement to a refund on uniform fairness grounds. We reject these arguments and affirm the circuit court.

---

[2]DFA first argues that Murphy's actions are allocable to nonbusiness income under the UDITPA, and the interest expenses are thus not deductible. DFA's alternative position is that Murphy's actions are related to business income under the UDITPA. It is logical for us to first determine the category (business or nonbusiness) because whether we address the argument regarding the deductibility of the expenses depends on this outcome.

We decide issues of statutory interpretations de novo without any deference given to the agency's interpretation. *See Am. Honda Motor, Co., Inc. v. Walther*, 2020 Ark. 349, at 5, 610 S.W.3d 633, 636. We look at the plain language of a statute and give words their ordinary meaning. If language in a statute is ambiguous, then we will look further to determine statutory intent. *See Myers v. Yamato Kogyo Co., Ltd.*, 2020 Ark. 135, 597 S.W.3d 613.

A. Classification of Murphy's 2013 Spin-Off Activity Under the UDITPA

The first issue is whether Murphy could amend its tax returns for the years 2014 and 2015 in this manner. Murphy amended and reclassified its activity regarding the separation from its parent, Murphy Corp., from business to nonbusiness under the UDITPA.

1. *Business versus nonbusiness classification under the UDITPA*

Arkansas is one of thirty-four states that have adopted the UDITPA. Ark. Code Ann. §§ 26-51-701 et seq. The Act determines how Arkansas taxes corporate income for multistate and multinational businesses operating within it. The Act defines "business income" as

> income arising from transactions and activity *in the regular course* of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's *regular trade or business operations*.

Ark. Code Ann. § 26–51–701(a) (Repl. 2020) (emphasis added). The Act defines "nonbusiness income" as "all income other than business income." Ark. Code Ann. § 26-51-701(e) (Repl. 2020).

The UDITPA protects Due Process and Commerce Clause interests of businesses, so they are taxed constitutionally among the states. *See generally Pledger v. Ill. Tool Works,*

*Inc.*, 306 Ark. 134, 136, 812 S.W.2d 101, 102 (1991); *see also Hunt-Wesson, Inc. v. Franchise Tax Bd. of Cal.*, 528 U.S. 458, 464 (2000) ("[N]onunitary" [nonbusiness] income may not constitutionally be taxed by a State, other than the corporation's domicile, unless there is some other connection between the taxing State and the income."). Income generated by activity that is part of a business's regular activity and function is classified as "business income" and apportioned among the states in which the business operates. Income generated through atypical activity is labeled "nonbusiness income" and allocated 100 percent to the state of domicile.

We focus on the nature of the taxpayer's business when determining whether activity is "business income." *See Pledger v. Getty Oil Expl. Co.*, 309 Ark. 257, 262, 831 S.W.2d 121, 124 (1992). Under the UDITPA, business income comes from (1) transactions and activity in the regular course of the taxpayer's business (transactional test) and (2) the acquisition, management, and disposition of property that constitutes integral parts of the taxpayer's regular business (functional test). *Id.* at 262, 831 S.W.2d at 124–25 (citing McGowan and Murray, *The Business v. Nonbusiness Income Controversy: Recent Developments*, 8 J. of State Taxation 303, 303–04 (1989)).

There are two primary Arkansas cases on point. In *Getty Oil*, the parent corporation transferred a note to one of its subsidiaries. *Getty Oil*, 309 Ark. 257, 831 S.W.2d 121. The result was more than $11 million in intercompany interest income owed by the parent corporation to its subsidiary. *Id.* at 260, 831 S.W.2d at 123. The subsidiary, domiciled in California, considered the income "nonbusiness" and did not apportion any of it to Arkansas for corporate income tax purposes. *Id.* at 261, 831 S.W.2d at 124. DFA audited and

6

disagreed. On appeal, we found this transfer was an isolated event and not one that occurred in the regular course of the subsidiary's business. *Id.* at 262–63, 831 S.W.2d at 124–25. We explained we would not interpret "business income" in a manner that would "eliminate the distinction between business and nonbusiness income." *Id.* at 264, 831 S.W.2d at 126. This court agreed with the subsidiary taxpayer that it was nonbusiness-income activity.

Yet in *American Honda*, this court held that an automobile corporation's income derived from the sale of environmental credits was apportionable business income. *See Am. Honda*, 2020 Ark. 349, 610 S.W.3d 633. We found that environmental-credit sales were a regular part of American Honda's activity for multiple years and, as such, resulted in business income under the UDITPA. *Id.* at 12, 610 S.W.3d at 640.

2. *Application of business versus nonbusiness classification to Murphy*

Murphy claims that it is in the business of operating retail-fueling stations and convenience stores, including the management of supply-chain logistics and marketing related to them. Murphy thus contends that the act of spinning off from one corporate parent to another was extraordinary and outside its normal operations. DFA argues that Murphy's acts of issuing senior notes and borrowing funds through credit agreements were not that unusual. DFA submitted facts showing that Murphy issued senior notes and credit agreements in multiple years after the 2013 change in corporate parents.

We hold that Murphy's separation from one parent company, Murphy Corp., to become a subsidiary of another, Murphy USA, was an extraordinary, nonrecurring event. It was the first and only time it had occurred since 1992. It was atypical and not a transaction or activity in the regular course of Murphy's business, thus failing the transactional test.

7

There are two categories under the UDITPA, and we cannot interpret one so broadly that it makes the other meaningless.[3] The Act is designed to fairly apportion among the states in which a corporation does business the fair amount of regular business income earned by the corporation's activities in each state. *Am. Honda*, 2020 Ark. 349, at 7, 610 S.W.3d at 637. Yet other extraordinary and atypical activity is allocated 100 percent to the state of domicile. For Murphy, this is Arkansas.

We decline to adopt DFA's view of this singular event as part of Murphy's general activity of issuing senior notes and entering into credit agreements. Whether Murphy later began to engage in the regular activity of issuing senior notes and borrowing funds for its fuel stations and related functions is not before us. The issue is narrower. Before this court is whether Murphy's separation from its corporate parent in 2013 was a regular business activity or an extraordinary one under the UDITPA. We find it is an extraordinary one more like the one-time transfer of a note with income interest in *Getty Oil* than the regular business activity in *American Honda* in which the business annually sold environmental-tax credits.

The Supreme Court of Kansas reached a similar conclusion in a case involving an attempted hostile takeover of Kroger. *See In re Kroger Co.*, 12 P.3d 889 (Kan. 2000). Kroger borrowed $4.1 billion and issued a special dividend to its shareholders to defeat the takeover.

---

[3]At the heart of the difficulty with these cases is the fact that the term "nonbusiness" seems counterintuitive when read out of context. These are all actions of corporations involving corporate income and expenses, and as such, they are all broadly related to business (we're not talking about personal income or expenses). But to preserve the distinction between "business" and "nonbusiness" and properly interpret these terms as used in the statute, we must understand them as subcategories designed to differentiate between types of business activities and thereby determine which state or states can tax the activity at issue.

*Id.* at 892. Kroger paid interest on the loan and deducted that cost as a business expense apportionable to the states in which it conducted business, including Kansas. The Kansas financing authority took the opposite position of DFA. It argued that the hostile takeover was extraordinary and the resulting interest expenses were nonbusiness income expenses 100 percent allocable to Kroger's domicile state. *Id.* Kroger argued that restructuring was part of its regular course of operations. *Id.* at 893. The Supreme Court of Kansas found it was nonbusiness income under the UDITPA and that these related expenses were allocable to its domicile state. *Id.* at 896–97. Other states have also found similar unusual events as once-in-a-corporate-lifetime occurrences and categorized them as nonbusiness under UDITPA.[4] For these reasons, we hold that Murphy's activity did not meet the transactional test for "business income" as defined under the UDITPA.

We also reject DFA's functional-test argument. We hold that the application of this test is clear, using the plain language of UDITPA. Murphy's activity surrounding its separation from Murphy Corp. to Murphy USA was not the "acquisition, management, and disposition of . . . property that constitute[s] integral parts of the taxpayer's regular business. . . ." *See generally Robert Half Int'l,* 78 Cal. Rptr. 2d at 453. The record demonstrated that Murphy did not use the proceeds from the borrowed funds to acquire,

---

[4]*See generally Robert Half Int'l, Inc. v. Franchise Tax Bd.*, 78 Cal. Rptr. 2d 453 (Cal. Ct. App. 1998) (as modified on denial of rehearing [1998]); *Phillips Petroleum Co. v. Dep't of Revenue & Fin.*, 511 N.W.2d 608 (Iowa 1993) (as amended on denial of rehearing [1994]); *Noell Indus., Inc. v. Idaho State Tax Comm'n*, 470 P.3d 1176 (Idaho 2020); *Hercules, Inc. v. Commissioner of Revenue*, 575 N.W.2d 111 (Minn. 1998); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87 (Tenn. 1993); *Polaroid Corp. v. Offerman,* 507 S.E.2d 284 (N.C. 1998), *cert. denied*, 526 U.S. 1098 (1999); *E.I. Dupont De Nemours & Co. v. Indiana Dep't of State Rev.*, 79 N.E.3d 1016 (Ind. T.C. 2017).

manage, and dispose of property. Rather, it borrowed funds for this one-time event, and on the same day, transferred them to Murphy USA, the parent corporation, to effectuate this unique spin-off. Because we hold the circuit court correctly found that Murphy could allocate the interest expense under the nonbusiness category of the UDITPA, we consider DFA's alternative arguments.

B. Interpretation of Arkansas Code Annotated Section 26–51–431(c)

DFA argues that if Murphy's separation from Murphy Corp. is categorized as nonbusiness income under UDITPA, then it can deduct no expenses related to it. This is because DFA's position is that Arkansas Code Annotated section 26-51-431(c)(3) provides that "no deductions shall be allowed for . . . [e]xpenses otherwise allowable as deductions which are allocable to nonbusiness income." DFA argues this statute means that any business in Arkansas with nonbusiness income under UDITPA cannot deduct any expenses allocable to that nonbusiness income. For Murphy, this would mean that, under amended returns, it cannot deduct for the interest expenses on the senior notes and credit agreements. Murphy counters that DFA is selectively reading the statute. Murphy argues that the statute applies to nonbusiness income not taxed in Arkansas. Murphy further argues that the statute only applies to deductible expenses allocable to that untaxed nonbusiness income and doesn't apply here because these expenses did not have a correlated income. The relevant statute is as follows:

Prohibition on certain deductions.

(c) For the purpose of computing Arkansas corporation income tax liability, no deduction shall be allowed for:

10

(1) Expenses otherwise allowable as deductions which are allocable to income other than interest, whether or not any amount of income is received or accrued, wholly exempt from the taxes authorized by Arkansas law;

(2) Interest on indebtedness incurred or continued to purchase or carry obligations the interest on which is wholly exempt from the taxes imposed by Arkansas law; and

(3) *Expenses otherwise allowable as deductions which are allocable to nonbusiness income.*

Ark. Code Ann. § 26-51-431(c) (Repl. 2020) (emphasis added).

We give the words in a statute their plain and ordinary meaning. Statutes are ambiguous when their construction could be subject to more than one meaning. *See generally Harris v. Crawford Cnty. Bd. of Elec. Comm'rs*, 2022 Ark. 160, 651 S.W.3d 703. When a statute is ambiguous, we look for legislative intent and examine the whole act. *Id.* We find that the statute is ambiguous. Murphy contends that the statute applies only to expenses allocable to nonbusiness income that is not taxed in Arkansas. DFA argues that the statute prohibits all deductions, including interest, for any activities classified as nonbusiness under the UDITPA. The statute is ambiguous because, reading the plain text, it is open to more than one interpretation and does not explicitly state what either party suggests. Because of this ambiguity, we must resort to rules of statutory construction.

When interpreting an ambiguous statute, we read subparts as a whole and review them in context to determine the legislative intent. *Id.* We reconcile statutory provisions to make them consistent, harmonious, and sensible to give effect to every part. *Hotels.com, L.P. v. Pine Bluff Advert. & Promotion Comm'n*, 2024 Ark. 86, at 7, 688 S.W.3d 399, 405. We

11

decline to adopt DFA's interpretation of the statute, which would be more expansive than what the legislature intended and inconsistent with our attempt to give effect to every part.

First, the goal of statutory interpretation is to find the intent of the General Assembly, which we know was "to Amend Ark. Code Ann. § 26-51-431 to Disallow Deductions for Expenses Related to the Production of Tax Exempt Income." Act 785 of 1993 pmbl. Thus, we hold the General Assembly intended for section 26-51-431(c) to prevent deductions for expenses allocable to income that Arkansas is unable to tax. Arkansas does not tax business income that corporations have apportioned or allocated to other states, so it is logical for the General Assembly to decide it would not allow deductions when Arkansas does not reap the corresponding benefit (like the economic benefit of the business activity, or the taxes on corporate income that was generated in part by the deducted expense).

For example, foreign-domiciled corporations' nonbusiness income under the UDITPA is taxed in their home states, not in Arkansas. That is why, in *Getty Oil*, the nonbusiness income at issue was not taxable in Arkansas and was instead taxable in Getty Oil's home domicile state of California. Section 26-51-431(c)(3) prevents those foreign-domiciled corporations whose nonbusiness income is not being taxed in Arkansas from deducting from their Arkansas taxes the expenses associated with generating that foreign-taxed income. The statute's purpose was to prevent businesses from taking deductions for expenses when the related income was tax exempt.

This interpretation of 431(c)(3) is also consistent with reading the section as a whole. Section 26-51-431(c)(1) prevents a business with income apportioned among several states from deducting expenses from its corporate income taxes in Arkansas related to income

apportioned to those other states. Expenses, in other words, "allocable to income" and "allocable to nonbusiness income" are not deductible in Arkansas if the income is not taxed in Arkansas. Ark. Code Ann. § 26-51-431(c)(1) & (c)(3). This is also why the plain language supports Murphy's argument that both subdivisions (c)(1) and (c)(3) tie the nondeductible expenses to those that are allocable to income, whether categorized under UDITPA as "business income" or "nonbusiness income." Not every deductible expense has a correlating income, and it was not materially disputed that these interest expenses were unattributable to income.

For us to accept DFA's definition would be to add language and broaden the statute's statement of purpose to read "to Disallow Deductions for Expenses Related to the Productions of Tax Exempt Income [and disallow all deductions for nonbusiness income on corporate tax returns]." The administrative law judge, who was the first one in this case to raise and address this statute, decided not to apply it because it contradicted the stated intent of the General Assembly. And DFA began arguing this statute only after the ALJ sua sponte mentioned and disposed of it as inapplicable, so we decline to give deference to a selectively employed application and interpretation of a statute.

We hold that the General Assembly's stated purpose was to limit deductions related to "tax exempt income." We hold that the statute does not apply to Murphy's interest-expense deductions, and we find the circuit court did not err.

### C. Fundamental Fairness

Last, DFA contends that we should reverse because, to do otherwise, would grant Murphy a windfall and create a nonuniform application of the UDITPA. DFA asserts that

it is unjust to allow Murphy to amend returns only in Arkansas, and seek a refund, without amending returns in other states to repay those inappropriate deductions. Why allow Murphy, once it realized a potential error, to seek a refund only in Arkansas? This could allow Murphy a windfall of almost $4 million and contravenes the purpose of uniform acts. This argument assumes Murphy will not follow through and amend those other returns once this litigation is complete.

Murphy responds by explaining that it made a business decision about where to begin this process of amending its tax returns. It also argues that Arkansas courts must apply and focus on Arkansas law and let other states deal with the resulting tax implications.

It is not the role of this court to adjust Arkansas tax returns based on unfairness to Tennessee, Mississippi, or other states. On this point, DFA argues not that uniform interpretation of the UDITPA requires a reversal, but that this court has a role in requiring taxpayers to file returns in multiple states uniformly under the UDITPA. It is also difficult to address the fairness or unfairness of Murphy's actions without addressing the fairness or unfairness of the State's sudden employment and enforcement of a tax statute to argue that multistate businesses domiciled in Arkansas have no deductions for any expenses on corporate income outside their regular business activity. This court should not wade into these waters.

We interpret and apply Arkansas law, which here is the UDITPA and the relevant statute on deductions. We decline to hold that a taxpayer is entitled to a refund that will not be awarded because of unfairness to other states. Murphy suggests it made a tactical decision to first file an amended return and seek a refund in Arkansas before filing amended returns

14

and paying additional taxes elsewhere. Whether the amount is $4 million or $400 matters less than the soundness of the legal holding and application of law. We decline to adjust the legal outcome on this basis.

It is for the legislature to legislate and decide policy matters. Certainly, there are benefits for allowing businesses that domicile in Arkansas to deduct their nonbusiness-income-categorized expenses, and consequences if Arkansas does not allow this practice. But each deduction comes at a cost to the State of Arkansas—here, it is a $4 million refund. It is for the General Assembly to consider whether the UDITPA remains adequate. It is also for the General Assembly to consider whether to eliminate, retain, or expand the statutory deductions as we interpret them.

Because the circuit court correctly granted summary judgment for Murphy, we affirm.

Affirmed.

Special Justice SHANE A. HENRY joins.

WOMACK, J., concurs without opinion.

BAKER and HUDSON, JJ., dissent.

WEBB, J., not participating.

**COURTNEY RAE HUDSON, Justice, dissenting.** Because Arkansas law is clear that appellee Murphy Oil USA, Inc. (Murphy), is not entitled to a refund of $3.7 million for interest expenses paid by it, I dissent from the majority's decision. This case arises from Murphy's amended tax returns for years 2014 and 2015 and whether certain interest payments made by Murphy in relation to a credit agreement and the issuance of senior notes

15

are "nonbusiness expenses" under Arkansas's version of the Uniform Division of Income for Tax Purposes Act (UDITPA), Ark. Code Ann. §§ 26-51-701 through -723 (Repl. 2020). On appeal, we review de novo appellant's, the Arkansas Department of Finance and Administration's (DFA), interpretation of this Act. *E.g.*, *Am. Honda Motor, Co. v. Walther*, 2020 Ark. 349, 610 S.W.3d 633.

The primary rule of statutory interpretation is to give effect to the intent of the legislature. *3 Rivers Logistics, Inc. v. Brown-Wright Post No. 158 of the Am. Legion*, 2018 Ark. 91, 548 S.W.3d 137. We construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* When the language is plain and unambiguous, this court determines legislative intent from the ordinary meaning of the language used. *Harris v. Crawford Cnty. Bd. of Election Comm'rs*, 2022 Ark. 160, 651 S.W.3d 703. Statutory language is ambiguous if it is open to more than one construction, or if it is of such obscure and doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Id.*

In 2013, Murphy took on $650 million in debt to fund a one-time distribution to Murphy's corporate parent, Murphy Oil Corporation, to separate from it. That debt came with interest expenses of roughly $70 million for tax years 2014 and 2015. After further review, Murphy now believes that those interest expenses were incorrectly classified, that it overpaid approximately $3.7 million in taxes, and that it is entitled to a refund of that amount. Murphy argues that the substantial interest expense from its one-time distribution constitutes a nonbusiness expense under the UDITPA, Ark. Code Ann. §§ 26-51-701

16

through -723. *See, e.g.*, *Am. Honda Motor Co. v. Walther*, 2020 Ark. 349, at 8, 610 S.W.3d 633, 637 (explaining the business–versus–nonbusiness test).

Murphy's phrase "nonbusiness expense," however, is not found in the Income Tax Act of 1921. *See* Ark. Code Ann. § 26-51-431 (Repl. 2020); Ark. Code Ann. §§ 26-51-701 to -723 (Repl. 2020). UDITPA applies only to "business income" and "nonbusiness income." Ark. Code Ann. § 26-51-701(a) and (e). All of Murphy's income must be one or the other. Murphy's argument that "nonbusiness expenses" are distinct from "expenses which are allocable to nonbusiness income" is not supported by law.

Arkansas Code Annotated § 26-51-431(c) provides that

(c) For the purpose of computing Arkansas corporation income tax liability, no deduction shall be allowed for:
(1) Expenses otherwise allowable as deductions which are allocable to income other than interest, whether or not any amount of income is received or accrued, wholly exempt from the taxes authorized by Arkansas law;
(2) Interest on indebtedness incurred or continued to purchase or carry obligations the interest on which is wholly exempt from the taxes imposed by Arkansas law; and
(3) Expenses otherwise allowable as deductions which are allocable to nonbusiness income.

Subdivision (c)(1) disallows deductions of expenses otherwise allowable as deductions from income that is "wholly exempt from the taxes authorized by Arkansas law." Similarly, subdivision (c)(2) disallows deductions of interest on indebtedness that is "wholly exempt from the taxes imposed by Arkansas law." Subdivision (c)(3), however, does not state that the nonbusiness income described by subdivision (c)(3) must be "wholly exempt from taxes imposed by Arkansas law." Instead, subdivision (c)(3) disallows deductions of all "expenses otherwise allowable as deductions which are allocable to nonbusiness income," regardless

of whether the nonbusiness income would otherwise be wholly exempt from the taxes imposed by Arkansas law.

Contrary to the majority's conclusion, this statutory provision is not ambiguous. The plain language in subdivision (c)(3) is not open to more than one construction, or of such obscure and doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *See Harris*, *supra*. Rather, the legislature clearly expressed its intent that subdivision (c)(3) apply to all expenses otherwise allowable as deductions that are allocable to nonbusiness income. While Murphy urges this court to read an additional requirement into this subdivision—that the nonbusiness income must also be wholly exempt from taxation in Arkansas—it is well settled that we will not add words to a statute to convey a meaning that is not there. *E.g.*, *Gibson v. Little Rock Downtown Neighborhood Assoc., Inc.*, 2023 Ark. 45, 660 S.W.3d 835; *3 Rivers Logistics, Inc.*, *supra*. The inclusion of the phrase "wholly exempt from the taxes imposed by Arkansas law" in the two preceding subdivisions demonstrates that when the legislature intended this requirement to apply, it stated so in unambiguous language. *See, e.g.*, *Ark. Parole Bd. v. Johnson*, 2022 Ark. 209, 654 S.W.3d 820 (stating that a fundamental principle of statutory construction is the maxim *expressio unius est exclusion alterius*, also known as the negative-implication canon, which means that the express designation of one thing may properly be construed to mean the exclusion of another). Furthermore, subdivision (c)(1) already prohibits deductions of expenses otherwise allowable as deductions from income that is wholly exempt from the taxes authorized by Arkansas law. Murphy's argument would render subdivision (c)(3) superfluous. *See, e.g.*, *Rogers v. Ark. Dep't of Corr.*, 2022 Ark. 19, at 6, 638 S.W.3d 265, 269 ("We construe a

statute so that no word is left void, superfluous, or insignificant, and we give meaning and effect to every word in the statute if possible.").

Because the statute is unambiguous, Murphy's other statutory-interpretation arguments are unpersuasive, and the majority errs in relying on them. For example, Murphy attempts to infer legislative intent from a bill caption, but this court has determined that the title of an act is not controlling and is properly considered only if the act itself is ambiguous. *McMahan v. Bd. of Trs. of Univ. of Arkansas*, 255 Ark. 108, 110, 499 S.W.2d 56, 57 (1973). Similarly, Murphy cites the circuit court's observation that because subsection (c) contains an "and" rather than an "or," subdivisions (c)(1) through (c)(3) must be read in conjunction. While this is usually true, we look to the Conjunctive/Disjunctive Canon in Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 69 (2012). "And" joins a conjunctive list, and "or" a disjunctive list, but with "negatives, plurals, and various specific wordings there are nuances." *Id.* at 116. As already explained, this section of the code is a list of nonallowable deductions. So, while the "and" would traditionally mean a conjunctive reading, in this case, it does not because each of the three subdivisions addresses different categories of potential deductions that will not be allowed.

A tax deduction is a privilege given only as a matter of legislative grace, and Murphy bears the burden of proving that it is entitled to it and that it is clearly within the terms of such conditions as may be imposed by statute. *St. Louis Sw. Ry. Co. v. Ragland*, 304 Ark. 1, 800 S.W.2d 410 (1990). Although interest expenses may otherwise be allowable as deductions from business income, they are not deductible when they are allocable to nonbusiness income. Ark. Code Ann. § 26-51-431(c)(3). DFA could not issue a refund

19

based on a deduction that Arkansas law forbids. Therefore, the circuit court erred by allowing Murphy to deduct interest expenses, otherwise allowable as deductions from business income, that were allocable to nonbusiness income. Based on the plain and unambiguous language of section 26-51-431(c)(3), I would reverse the circuit court's summary judgment in favor of Murphy. The majority's interpretation of section 26-51-431(c) entirely disregards our principles of statutory construction. As a result, Murphy will both have its cake and eat it too by receiving a $3.7 million refund from the reclassification of its interest expenses as nonbusiness in Arkansas, when it has already received an apportioned deduction for these same expenses—previously classified as business expenses by Murphy—in other states.

BAKER, J., joins.

*Bradley B. Young*, *Keith K. Linder*, and *Kevin Christian*, Office of Revenue Legal Counsel, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *David D. Wilson*, and *Martin A. Kasten*, for appellee.